*CC*

1   **Romero Chua**
2   **Pro Se**
    **12951 Riley Court**
3   **Rancho Cucamonga, CA 91739**      **NUNC PRO TUNC**

      FILED

    2009 MAY -1  PM 1:26

    CLERK US DISTRICT COURT
    SOUTHERN DISTRICT OF CALIFORNIA

    BY_____DEPUTY

4
            APR 2 7 2009
5

6

7                 **UNITED STATES DISTRICT COURT OF**

8                 **SOUTHERN DISTRICT OF CALIFORNIA**

9

10

11

12   ROMERO CHUA ,                )   Case No.:  **09-CV-0105L-LSP**
                                   )
13              Plaintiff,         )   FIRST AMENDED COMPLAINT
                                   )   FOR:
14       vs.                       )
                                   )   1.  **VIOLATION OF HOEPA**
15   BARRATT AMERICAN, AND AMERICA )   2.  **VIOLATION OF TILA**
                                   )   3.  **VIOLATION OF RESPA**
16   WHOLESALE  LENDER, AND        )   4.  **VIOLATION OF 12 CFR**
                                   )       **202/24CFR 203,  3500**
17   COUNTRYWIDE HOME LOANS, and   )   5.  **CALIFORNIA BUSINESS CODE**
                                           **17500, UNJUST ENRICHMENT**
18   DOES 1-100                            **AND FRAUD**

19       Defendants

20   _____

21

22                        **INTRODUCTION**

23

24    **COMES, NOW, PLAINTIFF ROMERO CHUA , *in pro per* ,** and  amends  the

25   original Complaint seeking an emergency and immediate declaratory and injunctive relief and

26   actual damages, statutory damages, attorneys fees and the costs of this action  against the

27   defendants  Barratt American and Countrywide Mortgage AKA Americas Wholesale Lender to

28   vacate Foreclosure. Reimburse loan closing cost, reimburse interest paid, rescind current loan as

     per the Ninth Circuit Court of Appeals  King v. California.  Sixth Circuit  Barrett v. J.P.

              ROMERO CHUA FIRST AMENDED COMPLAINT HOEPA, RESPA, TILA, ETC. 1

Morgan Chase Bank, N.A. for violation of Home Ownership Equity Protection Act, Truth in Lending Act, 15 U.S.C. Sec. 1601 *et seq.*, Federal Reserve Board Regulation Z, 12 C.F.R. Section 226, and for violations of California law

## JURISDICTION AND VENUE

**1.** The jurisdiction of this court for the First Cause of Actions is invoked pursuant to the Truth in Lending Act, 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337. Jurisdiction of this court for the pendent claims is authorized by Fed. R. Civ. P. §18(a).

## PARTIES

Romeo S Chua 1251 Riley Court Rancho Cucamonga, CA 91739 who after purchase owned and resided at that time and was Trustor on the property located at 978 Mira Lago Way San Marcos, CA 92078.

Barratt American who was the acting real estate agent and Broker for both the selling broker and loan broker for the purchase loan who at all time was licensed to operate and do business at 5950 Priestly Drive. Suite 101 Carlsbad, California 92009.

Countrywide Bank NA  DBA America Wholesale Lender who is  the beneficiary of the Deed of Trust and licensed to operate in the State of California  and   do business at 1199 North Fairfax St. Suite 500 Alexandria, VA 22314.

## FACTUAL ALLEGATIONS

**2.** This action arises out of fraudulent misrepresentations, negligence, and acts of fraud committed by Defendants which induced Plaintiff to enter into and then default upon a loan agreement with Defendants.

**3.** On or about January 14, 2006, client made a deposit using funds set aside for his retirement to purchase a home located at 978 Mira Lago Way, San Marcos, CA 92078.  Plaintiff then

applied for a loan through the same agency BARRATT AMERICAN, A Delaware Corporation,

doing business at 5950 Priestly Drive Carlsbad, CA 92008.

   4.  Plaintiff signed a Purchase Agreement, included was an Estimate of Closing Costs executed

by the plaintiff January 14, 2006, (attached as EXHIBT A).

   5.  The estimate of cost disclosed the point fees to be paid to the broker by the plaintiff / buyer,

borrower to be $ 4,399.92.  On or about March 27, 2006 Plaintiff received an additional set of

documents from the prospective Americas Whole Sale Lender AKA Countrywide Mortgage

(attached as EXHIBIT B).

   6.  These documents also included a Truth In Lending and a Good Faith Estimate of closing

cost for a loan in the original principle amount of $439,990.00, with an origination of closing

cost to equal 1 point of $4,390.00.

   7.  On or about March 16th, 2006 Plaintiff received an additional truth in lending statement that

included Itemization of amount financed that disclosed the closing origination fee to be

$4,545.00 (attached as EXHIBIT C) and an administration broker administration fee of $395.00.

(See attached EXHIBIT C).

   8.  On or about March 24, 2006 the plaintiff received an Estimated Settlement Statement

(attached as Exhibit  D) to let the Plaintiff know exactly how much money he had to bring into

the escrow to close the purchase of the home.

   9.  It was only in this document that a Yield Spread Premium was to be paid to the Broker.  It

was not disclosed that by the acceptance of this fee, it would affect the interest rate of the loan

and the overall cost of borrowing these funds. Lender also failed to properly disclose that this

was a negative amortization loan.

   10.  A loan that was made to Plaintiff by Countywide Home Mortgage DBA Americas

Wholesale Lender Plaintiff knowing that plaintiff could not afford the payments when the loan

interest would adjust or recast.

   12. Country wide having all the borrowers' financial income information and knowing this

situation that this loan could be a problem, failed to disclose to Plaintiff the actual amount he

ROMERO CHUA FIRST AMENDED COMPLAINT HOEPA, RESPA, TILA, ETC- 3

would be paying when the adjustment took place, and IN FACT NEVER EVEN SAID THERE WOULD BE ANY SUCH ADJUSTMENT or PAYMENT INCREASE.

13. Countrywide Home Mortgage places a prepayment penalty on this loan making it even more difficult that if he did have difficulty with this loan he would go into more debt trying to refinance; or lose his home should the values decrease.

14. It was never properly disclosed to plaintiff that the index adjustments fluctuated by a margin of 3.125%, and that this amount would go back on the principle and that once the principle reached 115% the loan would recast to the new principle amount to include all of the unpaid interest on the principle and changing the interest rate payment way to unaffordable limits.

16. The only way Plaintiff could afford it would be to be refinanced.  Currently the principal balance is higher then the value of the property, making refinancing impossible. The monthly payments on the statement never seemed to calculate correctly with the payment calculated by the plaintiff. Plaintiff is now in the process of a full accounting and audit of Payments made and payments charged to plaintiff in regards to his mortgage.  Plaintiff does not understand a negative amortization loan and continually made the minimum payments required. Also throughout the process Plaintive was never given the required State and Federal Disclosures according to the Truth in Lending, ECOA, (Equal Credit Opportunity Act), Servicing Agreement, and Right to receive appraisal.  These Documents received are listed on the Escrow Closing Instructions attached as Exhibit E.

## FIRST CAUSE OF ACTION
## (VIOLATION OF HOME OWNDERSHIP EQUITY PROTECTION ACT, HOEPA)

17) Plaintiff hereby re-alleges and incorporates by reference paragraphs 1through 16, as if set forth fully herein.

18)     Plaintiff alleges violation of The Home Equity Ownership Protection Act ("HOEPA") which is codified at 15 USC § 1639 *et seq*.  The intent of the section is to protect homeowners

from predatory lending practices.  In the event of non-compliance, HOEPA imposes strict penalties.

**19)**     Defendants violated HOEPA by numerous acts and material admissions, including but not limited to engaging in a pattern and practice of extending credit, in the form of a loan, to Plaintiff when, considering Plaintiff's then-current and expected income, obligations, and employment status, Plaintiff did not have sufficient ability to repay in violation of 15 USC § 1639 (h).

**20)**     Defendants violated HOEPA by failing to disclose in writing the following notice:  You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan, in violation of Section 129(a)(1) of TILA, 15 U.S.C. § 1639(a)(1), and Section 226.32(c)(1) of Regulation Z, 12 C.F.R. § 226.32(c)(1).

**21)**     Defendants violated HOEPA by failing to disclose, or accurately disclose  (i) the annual percentage rate, in violation of Section 129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section 226.32(c)(2) of Regulation Z, 12 C.F.R. § 226.32(c)(2); (ii) the regular payment amount, in violation of Section 129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section 226.32(c)(3) of Regulation Z, 12 C.F.R. § 226.32(c)(3); and, (iii) specified variable rate information, in violation of Section 129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section 226.32(c)(4) of Regulation Z, 12 C.F.R. § 226.32(c)(4).

**22)**     Defendants violated HOEPA by failing to make the disclosures described herein clearly and conspicuously in writing at least three business days prior to consummation of a HOEPA mortgage loan transaction, in violation of Section 129(b)(1) of TILA, 15 U.S.C. § 1639(b)(1), and Section 226.31(b) and (c)(1) of Regulation Z, 12 C.F.R. §  226.31(b) and (c)(1).

**23)**     Defendant's failure to provide the required disclosures provides Plaintiff with the right to rescind the transaction.

**24)**     Defendants violated HOEPA by selling or otherwise assigning the HOEPA loan without furnishing to Plaintiff the notice required by Section 131(d)(4) of TILA, 15 U.S.C. § 1641(d)(4), and Section 226.32(e)(3) of Regulation Z, 12 C.F.R. § 226.32(e)(3).

**25)**     Defendants violated HOEPA by failing to comply with any other provision of HOEPA, TILA or Regulation Z.

**26)** As a result of Defendant's misconduct, Plaintiff is entitled to actual damages to be determined at trial, including attorney fees.

## SECOND CAUSE OF ACTION
## (VIOLATION OF TRUTH IN LENDING ACT,(TILA) OF 1930)

**27)** . Plaintiff hereby realleges and incorporates by reference paragraphs 1-26 as if set forth fully herein.

**28)** . Defendant committed numerous Violations of the Truth-in-Lending Act (TILA), 15U.S.C. § 1601 *et seq* 1 & 1640) including but not limited to the following:

    i) Non Disclosure of Index Rate

    ii) No disclosure of Margin in Truth Lending disclosure,

    iii) No Disclosure of Negative Amortization of the loan,

    iv) No disclosure of Yield Spread Premium in the Good Faith Estimate.

Based on the foregoing, this loan was a "bait and switch" in that Plaintiff relied on the Defendants trusted position in the community, that this was the usual course of business. Accordingly Plaintiff never questioned any of the documents and instead rested with the belief that the states licensing requirements would protect him from any unscrupulous brokers committing fraud under the guise of TILA compliance.

## THIRD CAUSE OF ACTION
## (VIOLATION OF REAL ESTATE SETTLEMENT PROCEEDURE ACT, RESPA, 1974)

29). Plaintiff hereby realleges and incorporates by reference paragraphs 1-28 as if set forth fully herein.

30). Violation of RESPA (the Real Estate Settlement Procedures Act enacted in 1974), outlines judicial procedures whereby if the lender violates or fails to comply with these rules and regulations set up to protect the consumers, statutory penalties apply.

31). When the lender "fails to deliver certain forms or to disclose important terms accurately" to the borrower, (the Act extends the borrower's right to rescind the transaction to three years); *Beach,* 523 U.S. at 411, 118 S.Ct. 1408, the Act permits borrowers to rescind "the transaction," 15 U.S.C. § 1635(a), it further permits the borrower the right to remove the security interest on their home, and to recover certain fees incurred in the transaction, *id.* § 1635(b).

32). Mortgage loan brokers/lenders (DEFENDANTS) owe to the borrower a fiduciary duty of highest good faith and charged with duty of fullest disclosure of <u>all material facts concerning transactions that might effect lender investor's or borrower's decision. Barry V Raskov ( app.2 Dist.1991) 283 CAL. Rptr.436,232 Cal.App.3d 447;</u>.

33). Defendants failed to provide ANY disclosure of the terms and conditions of the loan to Plaintiff, (see attached Exhibit F, the forensic audit). Accordingly Plaintiff never questioned any of the documents and instead rested with the belief that the states licensing requirements would protect him from any unscrupulous brokers committing fraud under the guise of RESPA compliance.

## FOURTH CAUSE OF ACTION

## (VIOLATION 15 USC 1691 (e) 12 CFR 202.14, 24 CFR PARTS 202 and 203 AND 3500)

34). Plaintiff hereby realleges and incorporates by reference paragraphs 1-33 as if set forth fully herein.

35). Defendants are in Violation of **15 USC 1691 (e) 12 CFR 202.14** Failure to provide ECOA Appraisal Notice. Defendants NEVER provided an appraisal notice, as verified in the forensic audit attached as Exhibit F).

**36)**.  Defendants are in Violation of **24 CFR PARTS 203 AND 3500.**  There was no

disclosure of the Yield Spread Premium in the Good Faith Estimate  by the Defendants.

If Plaintiff had known of this "spread", he would not have acted as he did, and therefore

his reliance on Defendants representations was to his detriment.  Plaintiff was placed in

harms way by his reasonable reliance in Defendants position and implied

trustworthiness.  Had Plaintiff understood and had the proper disclosures, he would have

negotiated further and not accepted this margin, and thus would have reduced mortgage

payment according to his ability to pay.

**37).**  Defendants are in Violation of 24 CFR 3500.21, (HUD promulgated Regulation X **(24**

**CFR 3500), where CFR 3500.21** still applies.  Mortgage broker transactions that are table

funded (the loan is funded by a contemporaneous advance of loan funds and an assignment

of the loan to the person advancing the funds) are not secondary market transactions and are

covered by RESPA.); accordingly where Defendants failed to provide a Notice of Service

Transfer to Plaintiff is a violation.  (See attached Exhibit F, the forensic audit).

## FIFTH CAUSE OF ACTION

### UNFAIR TRADE PRACTICE Section 17500 et seq

**38)**  Plaintiff hereby realleges and incorporates by reference paragraphs 1-37 as if set forth

fully herein.

**39) § 17500. False or misleading statements generally:**

It is unlawful for any person, firm, corporation or association, or any employee thereof with
intent directly or indirectly to dispose of real or personal property or to perform services,
professional or otherwise, or anything of any nature whatsoever or to induce the public to
enter into any obligation relating thereto, to make or disseminate or cause to be made or
disseminated before the public in this state, or to make or disseminate or cause to be made or
disseminated from this state before the public in any state, in any newspaper or other

ROMERO CHUA FIRST AMENDED COMPLAINT HOEPA, RESPA, TILA, ETC. 8

publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

Added Stats 1941 ch 63 § 1. Amended Stats 1955 ch 1358 § 1; Stats 1976 ch 1125 § 4; Stats 1979 ch 492 § 1; Stats 1998 ch 599 § 2.5 (SB 597).

**35)** . Defendants are in Violation of unfair trade practices under **California**'s Business

**Code** Section 17500 et seq.,**unjust enrichment**, and fraud and deceit.   If Defendants

had not represented to Plaintiff that he indeed could afford this loan, he would have

acted differently.  Plaintiff 's reasonable reliance on Defendants representation put him

in harms way and was to his detriment.  Accordingly Plaintiff seeks the penalties as

allowed by law and stated in paragraph 34.

## LEGAL ARGUMENT

### 1

**36)** As stated above  Defendants violations of  HOEPA, RESPA, TILA, and **VIOLATION OF 12 CFR 202/24CFR 203,  3500, CALIFORNIA BUSINESS CODE 17500, UNJUST ENRICHMENT AND FRAUD, outline  a pattern of deception and can only cause the conclusion that those acts were intentional.**
   i)   **The intent of HOEPA legislation is to protect borrowers from predatory lending practices.**
   ii)  **The intent of TILA is to protect borrowers from deceptive lending, and provide transparent transactions requiring full disclosure documentation.**
   iii) **The intent of RESPA is also to protect borrowers requiring certain loan terms and interest rates, adjustable, and payment options to be fully disclosed and to make certain the borrower understands fully the consequences of each and every line on their loan agreement.**

iv) **12 CFR 202 requires the disclosure of an ECOA appraisal notice for the benefit of the borrower.**
v) **24 CFR 203 and 3500 requires disclosure of the "Yield Spread Premium", for the benefit of the borrower.**
vi) **CA Business Code  Section 17500 et seq., prevents any business from making false or misleading statements generally.**

37). If the plaintiff is not granted relief, irreversible and irreparable harm will come to pass, and material, physiological and physical damages will occur. The plaintiff will suffer the loss of his home, security and retirement money.  If relief is not granted it may make him a dependent of social services in his elderly years when he is no longer able to work, thereby affecting his dignity, self esteem that will ultimately affecting his health.

## 2

36). Plaintiff never received proper disclosure of the Yield Spread Premium, and it could result in the loss of his home.  Plaintiff's reliance on the implied trustworthiness of the Defendants has placed him in harms way.  Had Plaintiff been made aware of the "Yield Spread" by the defendants, Plaintiff could have better weighed his options he could have negotiated in order to protect himself.  Plaintiff could have had the option not to accept the terms and conditions of his loan, and potentially would have reduced the margin that in effect would reduce his Annual percentage Rate lowering the cost of borrowing the funds.  Plaintiff knew his income and understood his ability to pay according to the terms laid out in front of him at the time the loan was signed.  These "hidden" terms came as a surprise and recently came to light, thus causing Plaintiff to DEFAULT on his loan.

## 3

37). As Stated in the Forensic Audit (EXHIBIT F) Defendants conduct was tantamount to fraud, actually or constructively.  Defendants had more than a bad motive, it was a fraudulent scheme carried to fruition by the lender to up sell the interest rate by .4% and then put same in the cost of the real estate, with out Plaintiff's knowledge on the theory that they would unjustly enrich themselves. Stein V Simpson 37 CAL. 2nd 79,230 P. 2d 816."

<u>**4**</u>

**38).** Defendants Non-compliance stated in the third cause of action is a violation of the act which gives rise to a claim for actual and statutory damages. TILA recession does not only cancel a security interest in the property but it also cancels any liability for the client to pay finance charges and other charges, including accrued interest, points, broker fee, closing cost and lender must refund to client all finance charges and fees paid.

**39).** Plaintiff was never given full disclosure or explained that his loan was a "Negative Amortization" and that all unpaid interest monies would be placed on the principle and that his loan would recast once his principle reached or exceeded One Hundred and Fifteen Percent (115%) of his original principle.  TILA was enacted by Congress to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available and avoid the uninformed use of credit."  As implemented by Federal Reserve Board Regulation Z, TILA "promote[s] the informed use of consumer credit by requiring disclosures about its terms and cost." TILA and its implementing regulation detail the disclosure requirements for lenders. They also outline the potential penalties for lenders who fail to comply with those disclosure obligations. TILA requires lenders to make material disclosures, in writing, in a form that the borrower may keep. A section of Regulation Z, 12 C.F.R. [section] 226.18, details the specific items that must be included in the set of disclosures that creditors are required to make. Among other things, lenders must accurately disclose the annual percentage rate, the finance charge, the amount financed, the total payments, and the payment schedule.

**41).** Although certain governmental agencies may enforce some of TILA's requirements, the Act also provides private borrowers with a host of remedies they may enforce through private rights of action. One such remedy is the right of rescission. For consumer credit loans secured by the borrower's principal dwelling, TILA permits the borrower to rescind the transaction up to three

days after the transaction.  This three-day period is automatic and does not require any

misconduct on the part of the lender. TILA extends this right of rescission, however, if the lender

does not comply with TILA's disclosure requirements and fails accurately to disclose material

terms to the borrower. If the borrowers allege that they did not receive the requisite disclosures,

the three-day right may last for up to three years. When TILA disclosures were not made, the

right to rescind expires upon the earlier of (a) three years after the consummation of the

transaction; (b) the sale of the property; or (c) the transfer of the borrower's interest in the

property. Additionally, if an agency with TILA-enforcement authority institutes a proceeding

against the lender and finds a TILA violation, then a borrower whose right to rescind is based on

any matter in the proceeding may have an even longer period to rescind.

**42).**  The Truth in Lending Act, Pub.L. No. 90-321, 82 Stat. 146 (codified as amended at 15

U.S.C. § 1601, *et seq.*), "was enacted to promote the informed use of credit by consumers

by requiring meaningful disclosure of credit terms," *Begala v. PNC Bank, Ohio, N. A.,* 163

F.3d 948, 950 '(6th Cir.1998). "[W]hen a loan made in a consumer credit transaction is

secured by the borrower's principal dwelling," the Act permits the borrower to "rescind the

loan agreement," *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 411, 118 S.Ct. 1408, 140

L.Ed.2d 566 (1998), up to three business days after the transaction, *see* 15 U.S.C. § 1635(a).

When the lender "fails to deliver certain forms or to disclose important terms accurately" to

the borrower, the Act extends the borrower's right to rescind the transaction to three years.

*Beach,* 523 U.S. at 411, 118 S.Ct. 1408. And when the Act permits borrowers to rescind

"the transaction," 15 U.S.C. § 1635(a), it permits them not only to remove the security

interest on their home but also to recover certain fees incurred in the transaction, *id.* §

1635(b).  Plaintiff under these guidelines is asserting his right to extend the right of

rescission, and request court to grant him that relief.

**43).** Plaintiff's argument as contained is the Causes of Action in this First Amended

Complaint, and codified in the aforementioned sections are supported by the following

cases:

King v. California, 784 F.2d 910 (9th Cir. 1986), cert. denied, 484 U.S. 802 (1987).

Barrett v. J.P. Morgan Chase Bank, N.A., 445 F.3d 874 (6th Cir. Apr. 18, 2006), petition for

reh'g en banc filed, 05-5035, 05-5146 (6th Cir. May 16, 2006).

15 U.S.C. [section] 1601(a).

(5.) 12 C.F.R. Part 226.

12 C.F.R. [section] 226.1(b).

12 C.F.R. [section] 226.23(3) n.48.

15 U.S.C. [section] 1635(a); see also 12 C.F.R. [section] 226.23(3).

15 U.S.C. [section] 1635(b); see also 12 C.F.R. [section] 226.23(d)(1)-(2).

King, 784 F.2d at 913.

Duren v. First Gov. Mort. & Investors Corp., 221 F.3d 195, 2000 WL 816042, at *2 (D.C.

Cir. June 7, 2000) (unpublished table opinion).

King, 784 F.2d at 913.

rescind." (citation to King omitted)).

Duren, 2000 WL 816042, at *2.

Nichols v. Mid-Penn Consumer Discount Co., No. A-88-1253, 1989 WL 46682, at *6 (E.D.

Pa. Apr. 28, 1989), judgment aff'd, 893 F.2d 1331 (3d Cir.); In re Wright, 127 B.R. 766

(Bankr. E.D. Pa. 1991), aff'd, 133 B.R. 704 (E.D.Pa.); In re Steinbrecher, 110 B.R. 155, 166

(Bankr. E.D. Pa. 1990).

Coleman v. Equicredit Corp. of Am., No. 01 C 2130, 2002 WL 88750 (N.D. Ill. Jan. 22,

2002) (Leinenweber, J.).

Jenkins v. Mercantile Mort. Co., 231 F. Supp. 2d 737 (N.D. Ill. 2002) (Bucklo, J.).

Pulphus v. Sullivan, No. 02 C 5794, 2003 WL 1964333 (N.D. Ill. Apr. 28, 2003) (Plunkett, J.).

Payton v. New Century Mort. Corp., No. 03 C 333, 03 C 703, 2003 WL 22349118 (N.D. Ill. Oct. 14, 2003) (Holderman,

Coleman, 2002 WL 88750, at *2.

Jenkins, 231 F. Supp. 2d at 745.

In re Wright, 127 B.R. 766, 770-771 (E.D. Pa. 1991).

Jenkins, 231 F. Supp. 2d at 745.

Pulphus, 2003 WL 1964333, at *17.

Payton, 2003 WL 22349118, at *2.

McKenna v. First Horizon Home Loan Corp., 429 F. Supp. 2d 291, 312-315 (D. Mass. Mar. 31, 2006) (interpreting a Massachusetts state consumer finance law by reference to TILA and cases interpreting it), petition for review granted, No. 06-8018 (1st Cir. June 28, 2006);

McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30-31 (D. Mass. 2003) (noting that the First Circuit has not addressed this issue, on which courts are split, but concluding that rescission is possible after refinancing).

Barrett, 445 F.3d 874.

Id. At 876-877.

Id. At 877.

12 C.F.R. [section] 226.23(3).

Pulphus, 2003 WL 1964333, at *17.

15 U.S.C. [section] 1635.

( 12 C.F.R. [section] 226.23(a).

See 15 U.S.C. [section] 1635(b); see also 12 C.F.R. [section] 226.23(d)(1)-(2).

Barrett, 445 F.3d at 879-880.15 U.S.C. [section] 1601(a).

See Barrett, 445 F.3d at 879

## CONCLUSION

Plaintiff believes that the defendant failed to comply with the well known rules and regulations set forth in the above stated codes, and was required to know those regulations in order to obtain his/her licensing.  Therefore Plaintiff alleges that Defendants knowingly and willfully carried out the wrongful action of deceiving Plaintiff for reason of self gain and greed.   Defendants were in fact enriched, did in fact cause Plaintiff to be impoverished, and a direct and distinct connection between the enrichment and impoverishment exists, and that there is an absence of a justification for that enrichment and impoverishment, and there is a remedy provided by law to grant him the relief requested.

Plaintiff therefore prays to the court to grant him the relief by ordering the following:

    i)   Rescind the Mortgage as allowed by law.

    ii)  Reimburse the closing costs and all interest accrued.

    iii) Prevent the defendant from encumbering, selling, hypothecating, transferring any interest in the subject property.

    iv) Jury Trial

    v)  Any and all other remedies available or allowed by law that the court deems proper and has the authority to order.

Plaintiff request a jury trial against Defendant and asks the court to order any remedies deemed proper in the interim until trial.

Dated this

Romero Chua
Pro Per

4.22.09

ROMERO CHUA FIRST AMENDED COMPLAINT HOEPA, RESPA, TILA, ETC-. 16